**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

VERNON PRICE and EILEEN PRICE,

                                        Plaintiffs,                    1:18-cv-00407 (BKS/CFH)

v.

ONE WORLD TECHNOLOGIES, INC., and RYOBI
TECHNOLOGIES, INC.

                                        Defendants.

_____

**Appearances:**

*For Plaintiffs:*
George J. Szary
DeGraff, Foy & Kunz, LLP
41 State Street, Suite 901
Albany, New York 12207

*For Defendants:*
Rosario M. Vignali
Ryan E. Fennell
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, New York 10604

Marc J. Kaim
Wilson Elser Moskowitz Edelman & Dicker LLP
200 Great Oaks Boulevard, Suite 228
Albany, NY 12203

**Hon. Brenda K. Sannes, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

On April 4, 2018, Plaintiffs Vernon Price and Eileen Price brought this diversity action

against Defendants One World Technologies, Inc. and Ryobi Technologies, Inc. asserting claims

for negligence, strict products liability, breach of express and implied warranty, and loss of

consortium arising from a July 27, 2015 accident involving a miter saw manufactured by Defendants. (Dkt. No. 1). Presently before the Court are: (1) Defendants' Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rules of Practice for the United States District Court for the Northern District of New York, (Dkt. Nos. 32-34); and (2) Defendants' Motion to Strike or Compel Further Responses with respect to certain of Plaintiffs' responses to Defendants' Statement of Undisputed Material Facts. (Dkt. No. 41). Plaintiffs oppose both motions, (Dkt. Nos. 37, 43), and Defendants have responded to Plaintiffs' opposition briefs. (Dkt. Nos. 42, 44). For the following reasons, Defendants' Motion to Strike is granted in part and denied in part, and Defendants' Motion for Summary Judgment is granted in part and denied in part.

## II.   FACTUAL BACKGROUND[1]

On July 27, 2015, Plaintiff Vernon Price ("Mr. Price") was severely injured while operating a Ryobi 10 inch Sliding Compound Miter Saw with Laser, Model TSS101L, manufactured by Defendants (the "Saw"). (Dkt. No. 37, at ¶ 1). The Saw is a type of circular saw with the motor and blade mounted on a pivoting arm. (Dkt. No. 37-6, at ¶ 5). The motor and blade of the Saw may be slid from front to rear on rails. (*Id.*). The wood to be cut using the Saw, referred to as the "workpiece," is placed on a flat metal table below the arm of the Saw. (*Id.* at ¶ 6). The Saw is activated by pressing an on/off switch located on its arm, at which point the motor is energized and the circular Saw blade rotates at a high speed. (*Id.* at ¶ 7). With the blade spinning, the Saw's arm is lowered until the blade contacts the workpiece to cut it. (*Id.* at ¶ 8).

---

[1] The facts stated herein are drawn from Defendants' Statement of Undisputed Material Facts, (Dkt. No. 34) ("Defendants' 7.1 Statement"), and Plaintiffs' Response to Defendants' Statement of Material Facts and Counter Statement of Material Facts, (Dkt. No. 37), to the extent those facts are well-supported by pinpoint citations to the record, as well as the exhibits cited therein to the extent they are admissible as evidence.  The facts are taken in the light most favorable to Plaintiffs. *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

The pivoting arm/motor/blade assembly is called the "head" of the Saw. (*Id.* at ¶ 9). The shaft at the center of the Saw blade holding it in place is referred to as the "arbor." (*Id.* at ¶ 10). A guard surrounds the blade while the arm is in the upper position, and as the arm is pushed down the guard retracts to expose the blade, during both alignment of the cut and during cutting operations. (*Id.* at ¶ 11).

Mr. Price is an experienced woodworker and craftsman who had significant experience with power tools prior to his accident. He began learning carpentry and woodworking from an early age through high school shop classes and as an apprentice to his grandfather, who worked for an oil company, but also worked as a carpenter "on the side" and taught Mr. Price how to use power tools. (Dkt. No. 33-4, at 6-11). Since graduating from high school,[2] Mr. Price has been employed in a number of maintenance and construction-related jobs, including as a foreman at several electrical appliance companies, a maintenance supervisor at a housing restoration company, a foreman at a company that installed wood, tile and carpeting, and a maintenance worker at a rehabilitation center and a nursing home; many of these jobs involved woodworking, the use of saws and other power tools, or the supervision of others who were using such tools. (*Id.* at 12-18). At the time of Mr. Price's accident, he was self-employed as a contractor providing various "handyman" services, including woodworking and carpentry. (*Id.* at 18-19).

Given his experience, Mr. Price was aware of the general danger to the human hand posed by a rotating saw blade. (Dkt. No. 37, at ¶ 21). Through his high school shop classes and his work with his carpenter grandfather, Mr. Price learned about the importance of using a blade guard and keeping one's hands away from the blade when using a circular saw. (*Id.* at ¶¶ 3-5).

---

[2] Mr. Price completed one year of college before beginning his professional career, and also has completed vocational training programs in electrical and automotive work. (*Id.* at 8-9).

He made it his practice to keep his hands at least three to four inches from the Saw's blade (including when he was not using a clamp to secure the workpiece), and taught others to do the same. (*Id.* at ¶¶ 6, 11). He also instructed his sons never to use the Saw if the blade guard was off. (*Id.* at ¶ 9). Mr. Price claims to have read and understood the Saw's Operator's Manual, which included a number of instructions and warnings, in its entirety before using the Saw. (*Id.* at ¶¶ 7, 10).

Mr. Price also testified that he was generally familiar with the concept of a "kickback," in which the workpiece "kicks back at you when the saw kicks up." (Dkt. No. 33-4, at 26). He testified that, in his understanding, kickbacks occur when "a board isn't sitting level against the fence or too much teeth [of the Saw are] going into the board at once," and that they can be caused by a number of things, including a knot or warp in the workpiece. (*Id.*). He stated that, to prevent kickback, it is important to "make sure that [the workpiece is] level on [the fence], and to make sure that your hand is on it and holding one side of it . . . [a]nd keep it in control . . . flat against the fence." (*Id.* at 26-27). Mr. Price further testified that his standard practice (which he had been taught and consistently followed), and that of other carpenters he knew, was to use his hand, rather than a clamp, to secure the workpiece because doing so was "easier" and allows the user to "slide [the workpiece] to the next cut . . . without disconnecting the clamp." (*Id.* at 25-28). He said that, prior the accident at issue in this litigation, he had never experienced a kickback. (*Id.* at 26).

On July 27, 2015, Mr. Price was performing a type of cut called a "slide cut." Plaintiffs contend that, on the date of Mr. Price's accident, the Saw's blade guard had not been removed and was in place. (Dkt. No. 37, at ¶ 65). Mr. Price began the slide cut with the arbor of the Saw over the end of the workpiece, and did not fully extend the Saw's head to its maximum extension

before beginning his cut. (Dkt. No. 37, at ¶ 64). The Saw was equipped with a removable clamp that could be used to secure the workpiece, but Mr. Price chose not to use it, instead opting to secure the workpiece by holding it with his left hand, as was his usual practice. (*Id.* at ¶¶ 8, 13; Dkt. No. 33-4, at 28, 39). While Mr. Price was performing the slide cut, a kickback occurred, in which the workpiece was suddenly thrown up, causing the head of the Saw to run at Mr. Price and throwing his left hand into the rotating blade, which severed a large portion of the hand. (Dkt. No. 37, at ¶¶ 1, 69).

Plaintiffs contend that the Operator's Manual is inadequate because it fails to warn users of the necessity of pulling the Saw head out to its maximum extension prior to beginning a slide cut. (Dkt. No. 37-10, at 8-9). The Operator's Manual instructs the user to "pull the saw forward until the blade arbor (center of the saw blade) is over the front of the workpiece" before beginning a slide cut, but does not instruct the user to pull the Saw head to its maximum extension. (Dkt. No. 37, at ¶¶ 42-43, 49-52; Dkt. No. 33-7, at 27).[3] Plaintiffs proffer the testimony of a technical expert, Les Winter, PE ("Mr. Winter"), who opines that failure to pull the Saw head to its maximum extension before beginning a slide cut increases the number of the Saw's teeth that make contact with the workpiece during the cut, transmitting more force to the head of the Saw and, thus, increasing the risk that a kickback will occur. (Dkt. No. 37-6, at ¶¶ 23, 26-27). Mr. Winter further opines that this hazard is well known in the miter saw manufacturing industry, and that the Operator's Manual's failure to explicitly instruct users to begin their slide cut at the fully extended position fails to give users the information they need to operate the Saw safely, increasing the likelihood of kickback and serious injury. (*Id.* at ¶¶ 27, 30, 32, 33(a)-(d)).

---

[3] Under a section labeled "Specific Safety Warnings," the Operator's Manual also warns users as follows: "**BE SURE THE BLADE CLEARS THE WORKPIECE.** Never start the saw with the blade touching the workpiece." (Dkt. No. 33-7, at 5).

Plaintiffs concede that there is no rule, regulation or standard promulgated by Underwriters Laboratories ("UL"), the Occupational Safety & Health Administration ("OSHA") or the Consumer Product Safety Commission ("CPSC") that requires saw manufacturers to include such an instruction. (Dkt. No. 37, at ¶ 18). However, relying on Mr. Winter's analysis, they contend that there *is* nonetheless an industry-recognized standard for the proper performance of a slide cut, as evidenced by an instructional video produced by the Power Tool Institute (a trade organization of which Defendants are members) ("PTI") and the manuals of other saw manufacturers. (*Id.* (citing Dkt. No. 37-6, at ¶ 27); *see also id.* at ¶¶ 53-58). On the latter point, while the record contains excerpts from a number of instruction manuals for similar saws manufactured by Defendants' competitors, (Dkt. No. 33-9), the parties disagree on how to interpret those manuals. Defendants claim that the vast majority of these manuals either do not express in words how far to pull back the saw head before making a slide cut or use language "virtually identical" to the Operator's Manual's language. (Dkt. No. 34, at ¶ 22-23). Plaintiffs (again relying on Mr. Winter's testimony) claim that the vast majority of the manuals include instructional diagrams making clear that the saw head must be pulled back to its maximum extension before beginning a slide cut, which the Operator's Manual does not. (Dkt. No. 37, at ¶¶ 22-23, 52, 58).

Plaintiffs separately contend that the Operator's Manual is inadequate because it fails to warn users that the Saw's clamp is a safety feature which, if not used, could result in serious injury. (Dkt. No. 37-10, at 8-9). On this point, the Operator's Manual's first page of "General Safety Rules" includes a warning that "failure to follow all instructions listed below may result in . . . serious personal injury." (Dkt. No. 33-7, at 4). One of the "instructions listed below" on that same page instructs the user as follows: "**SECURE WORK.** Use clamps or a vise to hold

work when practical, it is safer than using your hand and frees both hands to operate the tool."
(*Id.*). On the next page, under a heading titled "Specific Safety Rules," the manual instructs users
to "**FIRMLY CLAMP OR BOLT** the tool to a workbench or table at approximately hip
height," and to "**ALWAYS USE A CLAMP** to secure the workpiece when possible." (*Id.* at 5).
Notwithstanding these warnings, relying on Mr. Price's testimony, Plaintiffs claim that because
the Operator's Manual does not explicitly identify the clamp as a safety feature, define the
circumstances under which it is "possible" or "practical" to use the clamp, or warn that failure to
use it can increase the risk of kickback, Mr. Price was unaware that failing to use it could result
in serious physical injury. (Dkt. No. 37, at ¶¶ 44-48, 59-60, 67-68). Plaintiffs further rely on the
analysis of Mr. Winter, who opines that, because the Operator's Manual fails to "expressly
advis[e] the user that the clamp is a safety device and the associated risks if not used," including
the risk of "kickback, the throwing of the workpiece, and possible operator injury," the
Operator's Manual "deprived [Mr.] Price of the information he needed to safely operate the
saw." (Dkt. No. 37-6, at ¶¶ 27, 31, 33(e)-(f)). Mr. Winter supports his analysis by pointing to a
manual written by another saw manufacturer, which includes a more explicit warning that the
"workpiece must be secured firmly . . . with the vise during all operations," and that if this is not
done, "the material may move during the cutting operation . . . causing the material to be thrown
and loss of control resulting in serious personal injury." (*Id.* at ¶ 27).

 Mr. Price contends that he read and fully complied with the Operator's Manual's
instructions as written, and that had the Operator's Manual advised that the clamp was a safety
feature which should be used to avoid injury or that the Saw head should be fully extended
before beginning a cut, he would have followed those instructions. (Dkt. No. 37, at ¶¶ 61-62;
Dkt. No. 37-4, at ¶¶ 8, 12). Relying on Mr. Price's testimony and Mr. Winter's analysis

regarding the Operator's Manual's failure to fully apprise users of the need to use the clamp and properly position the saw head, Plaintiffs contend that the Operator's Manual's inadequate instructions caused Mr. Price's accident. (Dkt. No. 37, at ¶¶ 64-73).

## III.    MOTION TO STRIKE OR COMPEL FURTHER RESPONSES

Defendants' Motion to Strike raises two threshold issues that the Court must resolve before turning to the Motion for Summary Judgment: (1) whether Plaintiffs may rely on affidavits from Mr. Price (the "Price Affidavit") and Mr. Winter (the "Winter Affidavit"), which were submitted for the first time in connection with Plaintiffs' opposition, in opposing Defendants' Motion for Summary Judgment; and (2) whether certain of Plaintiffs' responses to the facts set forth in Defendants' 7.1 Statement should be stricken, deemed admissions or restated.

### A.    Price and Winter Affidavits

Defendants argue that the Price and Winter Affidavits are merely "[c]onclusory, self-serving affidavits" that Plaintiffs may not rely on to "create 'disputed facts' where, in reality, there are none." (Dkt. No. 41-3, at 10-12; *see also* Dkt. No. 42-1, at 8-10). Plaintiffs respond that their reliance on the Price and Winter Affidavits is proper under the Federal and Local Rules, as the affidavits are "based on the personal knowledge of the witnesses," do not contradict the witnesses' prior sworn testimony, and are "necessary to present facts required to oppose [Defendants'] motion not in the record" because Defendants "made a tactical choice not to inquire at the depositions about the specific topics addressed by the affidavits." (Dkt. No. 43, at 10-12).

Defendants' attacks on the Price and Winter Affidavit are without merit. Federal Rule 56 does not forbid parties from supporting their opposition to summary judgment with affidavits not previously submitted, so long as the affidavits are "made on personal knowledge, set out facts

that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Furthermore, while the law is clear that "a party does not show a triable issue of fact merely by submitting an affidavit that disputes his own prior sworn testimony," the law is equally clear that "a material issue of fact may be revealed by his subsequent sworn testimony that amplifies or explains, but does not merely contradict, his prior testimony," "especially where the party was not previously asked sufficiently precise questions to elicit the amplification or explanation." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) (citations omitted).

The cases Defendants cite in support of their argument concern affidavits that expressly contradicted a party's prior sworn testimony, failed to establish factual disputes necessary to defeat summary judgment, or simply restated conclusory allegations that lacked concrete factual support and were inconsistent with otherwise uncontroverted record evidence. *See, e.g.*, *Lujan v. Nat'l Wildlife Found.*, 497 U.S. 871, 888-90 (1990) (affidavit was ambiguous as to whether affiant actually used lands allegedly adversely affected by government action, and it was error for the court to "presume" this fact in plaintiff's favor where it was missing from the affidavit); *Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (affidavit simply contained conclusory allegations regarding alter ego theory that were inconsistent with a record "amassed" after two years of jurisdictional discovery); *United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, 393 F. Supp. 2d 199, 211-13 (S.D.N.Y. 2005) (assertions in affidavit were unsupported and contradicted by record evidence amassed over nearly two years of discovery, and also "flatly contradict[ed]" other sworn testimony by the same individual).

The portions of the Price Affidavit at issue contain Mr. Price's assertions that he always used the Saw as instructed in the manual, observed the safety warnings provided, and would have followed different instructions or warnings had they been provided. (Dkt. No. 37-4, at ¶¶ 5, 8, 12). Thus, unlike the affidavits the foregoing cases rejected, the Price Affidavit appears to allege facts that are within the scope of Mr. Price's personal knowledge, and would be admissible were Mr. Price to testify to them at trial. Furthermore, Defendants point to no portion of Mr. Price's deposition testimony or other record evidence that contradicts the facts alleged in the Price Affidavit. As such, the Price Affidavit does not, as Defendants claim, attempt to manufacture a dispute where none otherwise exists, but merely "amplifies" Mr. Price's prior testimony by supplementing it with necessary facts that he was not specifically asked about at his deposition. *Rule*, 85 F.3d at 1011. Of course, the credibility of the Price Affidavit's assertions is a "matter[] for the jury, not for the court on summary judgment." *Id.* At the summary judgment stage, the Price Affidavit constitutes valid evidence that Plaintiffs may rely on in establishing triable issues of fact regarding their claims.

Defendants' challenge to the Winter Affidavit is similarly meritless. Defendants primarily attack Mr. Winter's opinions in the final paragraph of his affidavit as conclusory. (Dkt. No. 41-3, at 11; Dkt. No. 42-1, at 8-9). But these statements are simply a summary of Mr. Winter's conclusions, which he expressly bases on the analysis conducted throughout the rest of his affidavit. (Dkt. 37-6). Defendants further assert that the rest of Mr. Winter's affidavit is "simply a 'cut and paste' recreation of the technical report he submitted (through counsel) in this case," (Dkt. No. 41-3, at 11; Dkt. No. 42-1, at 9), but do not provide any explanation as to why it is improper for Plaintiffs to, as they put it, "put in admissible form [Mr. Winter's] work on the file detailed in his report provided to Defendant[s] during discovery." (Dkt. No. 43, at 11).

Defendants do not argue that the Winter Affidavit is inconsistent with Mr. Winter's prior testimony or other undisputed record evidence, or otherwise explain why the Winter Affidavit is inadmissible or improper for the Court to consider.[4] Therefore, as with the Price Affidavit, the Court finds that Plaintiffs may rely on the Winter Affidavit as evidence in establishing triable issues of fact.

### B.   Plaintiffs' Responses to Defendants' 7.1 Statement

The remainder of Defendants' Motion to Strike concerns Plaintiffs' responses to the facts set forth in Defendants' 7.1 Statement. Defendants' 7.1 Statement, submitted in connection with their Motion for Summary Judgment as required under Local Rule 7.1(a)(3), contains 23 statements of fact, each of which is supported by citations to the record. (Dkt. No. 34). Under Local Rule 7.1(a)(3), Plaintiffs were required to file a response to the Defendants' 7.1 Statement. The rule provides that Plaintiffs' response "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs." L.R. 7.1(a)(3). "Each denial shall set forth a specific citation to the record where the factual issue arises." *Id.* "The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered

---

[4] The Court recognizes that it "may only consider admissible evidence" in ruling on a motion for summary judgment, and that it therefore may only consider Mr. Winter's expert testimony to the extent that it would be admissible under Rule 702 of the Federal Rules of Evidence. *Humphrey v. Diamant Boart, Inc.*, 556 F. Supp. 2d 167, 173-74 (E.D.N.Y. 2008) (citations omitted). However, Defendants have expressly declined to challenge the admissibility of Mr. Winter's testimony at this time, indicating that they may do so later. (Dkt. No. 42-1, at 6 n.4). Plaintiffs, for their part, cite Mr. Winter's experience as a "well credentialed professional engineer with vast experience concerning safety issues regarding power tools including saws, and with the development of instruction manuals such as the one at issue here," who has also "performed numerous forensic investigations and evaluations of power saws in the products liability setting." (Dkt. No. 37-10, at 16 (citing Dkt. No. 37-6, at ¶ 1, Exh. A)). They further defend his analysis, which "included inspection of the subject saw, review of deposition testimony and video, and a review of industry practices including the manuals of defendant's competitors as well as standards promoted by PTI, a recognized safety organization," as "well-reasoned, not speculative, and grounded in an accepted body of learning and experience in his field." (*Id.* at 17). In the absence of any challenge to the admissibility of Mr. Winter's testimony by Defendants, the Court finds that, for purposes of this Motion for Summary Judgment, Mr. Winter's testimony is admissible and may be considered.

paragraphs, followed by a specific citation to the record where the fact is established." *Id.* In accordance with this rule, Plaintiffs submitted their 7.1 Statement, which included responses to each of the facts in Defendants' 7.1 Statement, along with Plaintiffs' own numbered list of 50 additional facts they contend are in dispute, each with citations to record evidence. (Dkt. No. 37).

Defendants argue that all but three of Plaintiffs' responses to Defendants' 7.1 Statement fail to admit or deny the facts asserted, and instead "interject arguments and immaterial assertions," including "extraneous commentary and irrelevant statements that are unresponsive to anything in" the purported fact responded to. (Dkt. No. 41-3, at 5). The Court agrees that many of Plaintiffs' responses fail to comply with Local Rule 7.1(a)(3) by failing to admit or deny each of the Defendants' assertions in a short and concise statement. Many of Plaintiffs' responses also "assert[] additional facts (not directly responsive to the fact asserted)," "make legal arguments" regarding the materiality of a particular fact, restate Plaintiffs' legal theories, or "purport[] to '[d]ispute' a fact not actually asserted—or, in certain instances, merely *implied*—by [Defendants'] Rule 7.1 Statement," none of which constitutes a denial under Local Rule 7.1(a)(3). *Carlisle v. UPS, Inc.*, No. 15-cv-1376, 2017 WL 3738697, at *2, 2017 U.S. Dist. LEXIS 138909, at *5-7 (N.D.N.Y. Aug. 29, 2017) (citations omitted); *see also Zhao-Royo v. New York State Educ. Dep't*, No. 14-cv-0935, 2017 WL 149981, at *2-3 n. 2, 4, 2017 U.S. Dist. LEXIS 5080, at *3-4 n. 2, 4 (N.D.N.Y. Jan. 13, 2017).

Under Local Rule 7.1(a)(3), "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." As such, where Defendants have properly supported their asserted facts with pinpoint citations to record evidence, and where Plaintiffs have failed to expressly deny, or cite to any record evidence that would raise a genuine dispute as to the truth of, those facts, the Court

will deem those facts admitted, and will disregard Plaintiffs' extraneous legal argument, interjection of additional facts, and other superfluous commentary. *See Carlisle*, 2017 WL 3738697, at *2, 2017 U.S. Dist. LEXIS 138909, at *5-7; *Zhao*-Royo, 2017 WL 149981, at *3 n. 4, 2017 U.S. Dist. LEXIS 5080, at *4 n. 4.

Pursuant to the foregoing principles, the Court deems all of the facts set forth in Defendants' 7.1 Statement admitted with the exception of paragraphs 18, 22 and 23 (which the Court discusses further below). Defendants support each of their factual assertions with specific, pinpoint citations to the record (including, in many cases, Mr. Price's own deposition testimony). (Dkt. No. 34). Some of Plaintiffs' responses expressly admit the fact asserted, (Dkt. No. 37, at ¶¶ 1-2, 6, 8-9, 11, 16-17, 19, 20-21), some admit to portions of the fact asserted while not addressing other portions, (*id.* at ¶¶ 3, 5, 10, 12-15), and others admit to a *different* fact set forth in Plaintiffs' own words while failing to provide any direct response to the actual fact asserted. (*Id.* at ¶¶ 4, 7). In each response, Plaintiffs fail to expressly deny, or cite to any record evidence that would raise a genuine dispute as to the truth of, any portion of the asserted fact. Beyond their admission or lack thereof, the remainder of each of Plaintiffs' responses consists of a combination of legal argument (particularly regarding the materiality of the asserted facts)[5] or reiteration of Plaintiffs' legal theories, (*id.* at ¶¶ 3-7, 9-10, 12-16, 19-21), the interjection of additional facts not directly responsive to Defendants' factual assertion, (*id.* at ¶¶ 6, 8), and

---

[5] Plaintiffs have attempted to support their responses by arguing that many of the facts in Defendants' 7.1 Statement "have no relationship to Plaintiffs' claims," and that Plaintiffs' responses are intended to "point out that [Defendants'] statements, while perhaps accurate, have nothing to do with Plaintiffs' claims" in order to avoid "accept[ing] the statements without question, which would be tantamount to conceding their materiality." (Dkt. No. 43, at 5-8). A response to a statement of material facts is not the place for such argument; argument regarding materiality may be raised in the briefing on the motion. *See Zhao-Royo*, 2017 WL 149981, at *2 n. 2, 2017 U.S. Dist. LEXIS 5080, at *3 n. 2 ("[R]egardless of whether some or all of the facts to which Plaintiff responds as set forth above are immaterial for purposes of Defendant's motion for summary judgment, the issue of whether those *facts* are properly *disputed* is a separate matter . . . [W]here a nonmovant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted.").

denials of facts not expressly asserted by Defendants, (*id.* at ¶¶ 6, 9, 11-12, 16), all of which may

be disregarded by the Court for purposes of the Motion for Summary Judgment. *See Carlisle,*

2017 WL 3738697, at *2, 2017 U.S. Dist. LEXIS 138909, at *5-8. Therefore, the Court deems

each of these facts in Defendants' 7.1 Statement admitted.

However, as discussed further in Section IV.C *infra*, the Court finds that Plaintiffs have

raised genuine disputes as to the facts asserted in paragraphs 18, 22 and 23 of Defendants' 7.1

Statement, and that their denials of those facts are well-supported with pinpoint citations to the

record. Therefore, in ruling on the Motion for Summary Judgment, the Court will deem all the

facts set forth in Defendants' 7.1 Statement admitted except for those in paragraphs 18, 22 and

23.

## IV.     MOTION FOR SUMMARY JUDGMENT

### A.      Standard of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if

all the submissions taken together "show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of

material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of

the suit under the governing law," and is genuinely in dispute "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see*

*also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The

movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan*

*v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir.2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

### B.     Claims Resolved by Stipulation

In connection with their Motion for Summary Judgment, Defendants submit a stipulation of discontinuance, signed by counsel for all parties on February 3, 2020 (the "Stipulation") in which the parties agreed to voluntarily dismiss Plaintiffs' breach of express warranty, breach of implied warranty and punitive damages claims, all claims against Ryobi Technologies, Inc., and any and all claims of alleged defects related to the design and manufacture of the Saw (with the

exception of claims based on Defendants' allegedly inadequate warnings, as supported by Mr. Winter's analysis) with prejudice. (Dkt. No. 33-3).

Therefore, pursuant to the Stipulation, the Court will dismiss with prejudice Plaintiffs': (1) claims against Defendant Ryobi Technologies, Inc.; (2) claims for punitive or exemplary damages; (3) breach of express and implied warranty claim (Third Claim for Relief) against Defendant One World Technologies, Inc.; and (4) claims against Defendant One World Technologies, Inc. to the extent they are based on claims of design or manufacturing defect of the Saw, except to the extent such claims are based on allegedly defective warnings with respect to the positioning of the Saw's head prior to a slide cut and with respect to the use of the Saw's clamp.

### C.    Failure to Warn

Defendant One World Technologies, Inc.[6] seeks summary judgment with respect to Plaintiffs' remaining negligence and strict products liability claims[7] to the extent such claims are based on either: (1) a "generalized warnings claim" that Defendant failed to warn Plaintiffs of the "general hazards" associated with the Saw; or (2) Defendant's failure to provide Plaintiffs with proper warnings "with respect to the positioning of the [Saw's] head prior to a slide cut and with respect to the use of the [Saw's] clamp." (Dkt. No. 32, at 1-2).

---

[6] Because all of Plaintiffs' Claims for Relief against Defendant Ryobi Technologies, Inc. are dismissed, the Court will use the singular term "Defendant" to refer to the only remaining defendant, Defendant One World Technologies, Inc.
[7] Plaintiffs also assert, on behalf of Plaintiff Eileen Price, a Fourth Claim for Relief (Consortium), which would allow Plaintiffs to recover for tortious actions that harm "the marital partners' interest in the continuance of the marital relationship as it existed at its inception," including "not only loss of support or services, but elements of love, companionship, affection, society, sexual relations, solace and more." *Torres v. Hyun Taik Cho*, 902 N.Y.S.2d 781, 783 (N.Y. Sup. Ct. 2010) (citations omitted). Because "[a] claim for loss of consortium is derivative of the underlying claims," *Valente v. Textron, Inc.*, 931 F. Supp. 2d 409, 440 (E.D.N.Y. 2013), the viability of Plaintiffs' consortium claim at the summary judgment stage necessarily depends on the Court's determination regarding the viability of their negligence and strict products liability claims.

The parties base their respective arguments on New York law.[8] "[I]n order to recover on a claim for negligence, a plaintiff must show '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) (quoting *Akins v. Glens Falls City Sch. Dist.,* 53 N.Y.2d 325, 333 (1981)). As to strict liability, "[a] manufacturer who places into the stream of commerce a defective product which causes injury may be held strictly liable." *McCarthy v. Olin Corp.*, 119 F.3d 148, 154-55 (2d Cir. 1997) (citations omitted). There are three types of product defects that are actionable under New York law: "(1) a manufacturing defect, which results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm; (2) a warning defect, which occurs when the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm; and (3) a design defect, which results when the product as designed is unreasonably dangerous for its intended use." *Id.* at 154-55 (citations omitted). "Where liability is predicated on a failure to warn, New York views negligence and strict liability claims as equivalent." *Martin v. Hacker*, 83 N.Y.2d 1, 8 n.1 (1993). Here, therefore, the key questions at issue with respect to Plaintiffs' negligence and strict liability claims are identical: whether Defendants failed to provide adequate warnings regarding the potential dangers of the Saw and, if so, whether those inadequate warnings are causally linked to Mr. Price's injury.[9]

---

[8] The parties here have not briefed the choice of law issue and apparently agree that New York law applies. This shared premise is "sufficient to establish the applicable choice of law." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001).

[9] Plaintiffs assert two theories of strict liability: (1) warning defect, and (2) design defect. (Dkt. No. 37-10, at 14). However, the only "design defects" Plaintiffs allege are the same allegedly inadequate warnings that form the basis of their warning defect claim. (*Id.*, at 14-15). Therefore, under both theories, the relevant question here is whether there is a genuine dispute as to whether Defendant provided inadequate warnings that caused Mr. Price's injury. Thus, the Court's analysis that follows applies equally to both theories, as well as to Plaintiffs' negligence claim.

Under New York law, "[m]anufacturers have a duty to warn against 'latent dangers resulting from foreseeable uses of its product of which it knew or should have known,' and 'the danger of unintended uses of a product provided these uses are reasonably foreseeable.'" *Newell v. Ryobi Techs., Inc.*, No. 13-cv-8129, 2015 WL 4617184, at *3, 2015 U.S. Dist. LEXIS 101776, at *7 (S.D.N.Y. Aug. 3, 2015) (quoting *Liriano v. Hobart Corp.,* 92 N.Y.2d 232, 237 (1998)). "Failure-to-warn liability is intensely fact-specific, including but not limited to such issues as feasibility and difficulty of issuing warnings in the circumstances; obviousness of the risk from actual use of the product; knowledge of the particular product user; and proximate cause." *Id.*, 2015 WL 4617184, at *3, 2015 U.S. Dist. LEXIS 101776, at *7-8 (quoting *Liriano,* 92 N.Y.2d at 243). As a result, "[t]he adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment." *Id.*, 2015 WL 4617184, at *3, 2015 U.S. Dist. LEXIS 101776, at *8 (quoting *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 365-66 (2d Cir. 1997)). "Nevertheless, a warning may be held adequate as a matter of law where the warning is 'accurate, clear, consistent on its face, and . . . portrays with sufficient intensity the risk.'" *Kandt v. TASER Intern., Inc.*, 527 F. App'x 51, 53 (2d Cir. 2013) (quoting *Martin*, 83 N.Y.2d at 10). "In deciding whether a warning's adequacy presents a factual question for the jury, a court must carefully analyze the warning's language, including 'not only the meaning and informational content of the language but also its form and manner of expression,'" and should consider the warning "as a whole." *Id.* (citations omitted). Even where the warnings provided were inadequate, "New York recognizes two exceptions to a failure to warn claim: (1) 'where the injured party was fully aware of the hazard through general knowledge, observation or common sense,' *i.e.,* he was a knowledgeable user, and (2) where the

18

risks are open and obvious." *Santoro v. Donnelly.* 340 F. Supp. 2d 464, 486 (S.D.N.Y. 2004)

(quoting *Liriano*, 92 N.Y.2d at 241).

### 1.      Generalized Failure to Warn

Defendant's principal argument is that Plaintiffs cannot prevail on any claim based on

Defendant's alleged failure to warn Mr. Price about the general hazards associated with the

Saw's rotating blade. Specifically, Defendant argues that: (1) the danger of injury posed by the

Saw's revolving blade was "open and obvious," and thus required no warning; (2) at the time of

his injury, Mr. Price was a "knowledgeable user of power tools in general and was fully aware of

the risks and hazards specifically associated with the [Saw]"; and (3) the Saw and accompanying

Operator's Manual contained "comprehensive warnings" about the associated risks and hazards.

(Dkt. No. 33-10, at 6-15). Plaintiffs, for their part, deny that their claims are premised on a

generalized "failure to warn" about the dangers of the Saw's rotating blade, (Dkt. No. 37-10, at

10-13), and readily concede that "the general danger of a rotating saw blade is open and

obvious" and "was known to Mr. Price." (Dkt. No. 37, at ¶¶ 20-21). While it appears that

Plaintiffs do not intend to pursue any claim based on a generalized failure to warn, the Court

notes that, to the extent they were to pursue such a claim, their concessions in this regard would

themselves be sufficient to establish both an "open and obvious" and a "knowledgeable user"

defense, thus entitling Defendant to summary judgment on that claim. Accordingly, Defendant's

motion for summary judgment with respect to Plaintiffs' generalized failure to warn claim is

granted.

### 2.      Warnings Regarding Use of the Saw's Clamp

Defendant further seeks summary judgment dismissing "[t]hat portion of the Plaintiff[s']

Complaint that seeks recovery based on failure to warn with respect to . . . the use of the miter saw's

clamp." (Dkt. No. 32, at 2). Defendant points to the Operator's Manual's first page of "General

Safety Rules," which includes a warning that "[f]ailure to follow all instructions listed below may result in . . . serious personal injury." (Dkt. No. 33-10, at 18; Dkt. No. 42, at 6; Dkt. No. 33-7, at 4). One of the "instructions listed below" on that same page instructs the user to "**SECURE WORK.** Use clamps or a vise to hold work when practical, it is safer than using your hand and frees both hands to operate the tool." (Dkt. No. 33-7, at 4). On the next page, under a heading titled "Specific Safety Rules," the manual instructs users to "**FIRMLY CLAMP OR BOLT** the tool to a workbench or table at approximately hip height," and to "**ALWAYS USE A CLAMP** to secure the workpiece when possible." (*Id.* at 5). Defendant further argues that, as an experienced and professional woodworker, Mr. Price was well aware of the significance and function of the clamp, obviating the need for a warning. Defendant points to Mr. Price's deposition testimony, in which Mr. Price acknowledged that it was always his practice to keep his hands several inches away from the Saw's blade whenever he was not using the clamp, and casts that testimony as an admission that Mr. Price knew the clamp was a safety device and took greater precautions when not using the clamp. (Dkt. No. 33-10, at 18; Dkt. No. 42-1, at 6; *see also* Dkt. No. 33-4, at 25 (Mr. Price's testimony)).

Plaintiffs respond that the Operator's Manual's warnings regarding the clamp are insufficient because the Operator's Manual "does not make use of the clamp mandatory, it does not identify [the clamp] as a safety device, and it fails to warn the operator that failing to use the clamp could result in serious physical injury." (Dkt. No. 37-10, at 15). Plaintiffs rely on the affidavit of their technical expert, Mr. Winter, who opines that the Operator's Manual is defective in that it fails to specifically warn users that the clamp is a safety device or that failure to use it could increase the risk of kickback and resulting injury. (Dkt. No. 37-6, at ¶¶ 17-18, 27, 31-32, 33(e)-(f)). Plaintiffs also cite the deposition testimony of Charles Winchester, Defendant's Senior Product Safety Manager, in which Mr. Winchester acknowledged that: 1) the Operator's Manual does not specifically identify the clamp as a safety feature or instruct that not using it could result in a serious personal injury, and 2) the Operator's Manual does not instruct the operator that the use of a clamp is *required*, but simply

says that it should be used "where practical," without explicitly defining the situations in which it is "practical" to use the clamp. (Dkt. No. 37, at ¶¶ 44-48 (citing Dkt. No. 37-2, at 83-86, 108, 111-12)).

The Court finds that Plaintiffs have put forth sufficient evidence to raise a triable issue of fact as to whether the Operator's Manual's warnings with respect to the use of the clamp were adequate. As an initial matter, while the Operator's Manual does not specifically refer to the clamp as a "safety device" or "safety feature," it does include warnings, in sections explicitly labeled "General Safety Rules" and "Specific Safety Rules," that using a clamp is "safer than using your hands," and that it should "**ALWAYS** [be used] when possible" or "practical." (Dkt. No. 33-7, at 4-5). Furthermore, as Defendant points out, the "General Safety Rules" section does explicitly warn that "failure to follow all instructions listed below may result in . . . serious personal injury," a statement which can only be read to incorporate *all* the warnings listed in that section, including the warning regarding the clamp. (Dkt. No. 33-10, at 18; Dkt. No. 42-1, at 6; Dkt. No. 33-7, at 4). Read together, these warnings make clear that the purpose of the clamp is to improve operator safety. However, as Mr. Winter notes, the Operator's Manual does not concretely inform the user about the specific risks associated with not using the clamp: nowhere does the Operator's Manual state that failure to use the clamp can increase the risk of kickback, the specific injury-causing event alleged here. (Dkt. No. 37-6, at ¶¶ 17-18, 27, 31-32, 33(e)-(f)). While the Operator's Manual says that using a clamp is "safer than using your hand," it does not explain that this warning relates to the risk of kickback, instead merely saying that using a clamp "frees both hands to operate the tool"; from this warning, a user might assume that the clamp is "safer" only in the sense that it frees both hands and keeps them further from the blade, without realizing that it is also "safer" in the sense that it decreases the risk of kickback. Furthermore, Plaintiffs correctly point out that, by simply instructing users to use a clamp wherever "possible" or "practical" without further elaboration, the Operator's Manual offers little guidance as to the specific circumstances in which a clamp should or should not be used, and leaves

users with significant discretion to decide for themselves whether or not use of the clamp is appropriate in a given situation. (Dkt. No. 37, at ¶ 45 (citing Dkt. No. 37-2, at 111-12)).

Thus, while the Operator's Manual advises operators that using the clamp is, in a general sense, safer than not using the clamp, there is a factual question as to whether the warning portrays the dangers of not using the clamp clearly and with "sufficient intensity" to fully apprise operators of the risks they faced if they choose not to use it. *Kandt*, 527 F. App'x at 53 (quoting *Martin*, 83 N.Y.2d at 10); *compare, e.g., Humphrey*, 556 F. Supp. 2d at 180 (finding summary judgment on adequacy of warning inappropriate where Plaintiff "contends, through his expert, that the warnings . . . did not conspicuously state the hazards associated with the saw, including tooth separation/fracture and kickback"); *Arbaiza v. Delta Intern. Mach. Corp.*, No. 96-cv-1224, 1998 WL 846773, at *6, 1998 U.S. Dist. LEXIS 17886, at *18-19 (E.D.N.Y. Oct. 5, 1998) (finding an issue of fact as to the adequacy of a warning that simply advised users to "use saw blade guard and splitter for through cutting," where the "likelihood of a kickback [was] not readily discernible, and there is no evidence that the plaintiff was aware of the danger of kickback"); *with, e.g., Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 253 (E.D.N.Y. 2014) (warning regarding the use of blade guard was adequate as a matter of law where it said, among other things, "to prevent kickback, use the blade guard and splitter for all through sawing"); *Munoz v. Emerson Tool Co.*, No. 03-cv-2885, 2007 WL 9706982,[10] at *11 (E.D.N.Y. Aug. 13, 2007) (warnings were adequate as a matter of law where they "clearly and unambiguously warned against operating the saw freehand, warned against operating the saw without the safety guard when doing through cuts, and warned about the risks of kickbacks"); *Gould v. Rexon Indus. Corp., Ltd.*, No. 05-cv-374, 2006 WL 2301852, at *6, 2006 U.S. Dist. LEXIS 55323, at *17-18

---

[10] No parallel LEXIS citation available.

(N.D.N.Y. Aug. 8, 2006) (warnings were adequate as a matter of law where they, among other things, explicitly warned "against the dangers of 'kick backs,'" such that "the Court does not see how more explicit warnings (either on the saw itself or in the Owner's Manual) could have prevented Plaintiff from acting as he did").

Defendant's reliance on Mr. Price's general experience with power tools, and in particular his testimony that he kept his hands several inches away from the Saw's rotating blade when not using the clamp—which, Defendant argues, suggests that Plaintiff was subjectively aware that the clamp was intended as a safety feature to keep one's hands away from the Saw's blade—does not establish that Defendant is entitled to summary judgment based on a "knowledgeable user" defense. (Dkt. No. 33-10, at 18). A "knowledgeable user" defense requires that a plaintiff was "*actually* aware of the *specific* hazard that caused his injury," as well as the "severity of the potential harm." *Newell*, 2015 WL 4617184, at *6, 2015 U.S. Dist. LEXIS 101776, at *15-16; *see also, e.g., Humphrey*, 556 F. Supp. 2d at 180 (denying summary judgment on adequacy of warning where plaintiff contended that, despite three years of experience using a handheld power saw and observing the blade guard loosening and rotating back, he was unaware of the specific "combination of hazards" that caused a kickback in his case, and his expert opined that the manual failed to "conspicuously state" those specific risks).

Here, while Mr. Price clearly has knowledge about power tools and the importance of keeping one's hand away from a rotating blade, as well as general awareness about the risk of kickback and the importance of "mak[ing] sure that [the workpiece is] level on [the fence]" in order to avoid a kickback, (Dkt. No. 33-4, at 26-27), there is a genuine dispute of fact as to whether he was aware that using his hand, rather than the clamp, to "level" the workpiece would *make a kickback more likely*. To the contrary, Mr. Price himself testified that his standard practice, and that of many fellow carpenters he knew, was to use his hand rather than a clamp to secure the

workpiece, and that in his many years as a woodworker, he had never experienced a kickback using this approach. (Dkt. No. 33-4, at 25-28). Mr. Winter further testified that, in his experience, it is "very common" for knowledgeable woodworkers to choose not to use clamps on miter saws, creating a need to provide these woodworkers with warnings about the specific potential consequences of that decision. (Dkt. No. 33-6, at 35). From these facts, it is possible that a reasonable jury could find that even an experienced woodworker like Mr. Price would not fully understand or appreciate that failure to use the clamp would increase the risk of kickback without more specific warnings than those provided in the Operator's Manual. As such, on this record, and because the adequacy of a warning is a jury question in most circumstances, the Court cannot find that the warnings with respect to the clamp were so "accurate, clear, consistent, and sufficiently forceful" as to be adequate *as a matter of law*. *Kandt*, 527 F. App'x. at 53.

The Court further finds that Plaintiffs have put forth sufficient evidence to raise a triable issue of fact as to whether the Operator's Manual's warnings regarding the use of the clamp caused Mr. Price's injury. "Within the Second Circuit, courts disagree as to whether, at the summary judgment stage, a plaintiff must prove that an adequate warning would have prevented his injury," though many "courts within the Circuit have held that a plaintiff cannot defeat a motion for summary judgment without proffering evidence that the plaintiff would have avoided injury had the defendant supplied adequate warnings." *Cuntan v. Hitachi KOKI USA, Ltd.*, No. 06-cv-3898, 2009 WL 3334364, at *16, 2009 U.S. Dist. LEXIS 127016, at *49-50 (E.D.N.Y. Oct. 15, 2009) (collecting cases). In any event, here Plaintiffs have proffered sufficient evidence of causation to survive summary judgment. The Price Affidavit affirms that Mr. Price read the Operator's Manual and observed its instructions and safety warnings, that he understood the Operator's Manual's instruction to use a clamp "where practical" to suggest that the use of the clamp was optional, that he did not understand from the Operator's Manual that not using the

24

clamp could increase the risk of injury from kickback, and that he would have used the clamp had the manual provided more explicit safety warnings regarding the clamp's use. (Dkt. No. 37-4, at ¶¶ 4-5, 9-12).[11] Similarly, in his deposition, Mr. Price testified that he did not understand the warnings in the Operator's Manual to *require* the use of a clamp, and that his own practice, as well as that of many other carpenters he knew, was to opt out of using it. (Dkt. No. 33-4, at 25, 27-28, 49). Questions regarding the credibility of Mr. Price's assertions that he would have observed a different, more specific warning are, of course, firmly within the province of a jury, and not this Court, to resolve. *See Rule*, 85 F.3d at 1011 ("Assessments of credibility . . . are matters for the jury, not for the court on summary judgment." (citations omitted)). At the summary judgment stage, Mr. Price's uncontroverted testimony is sufficient to raise a triable issue of fact on the issue of causation.

Therefore, the Court will deny Defendant's Motion for Summary Judgment on Plaintiffs' Claims for Relief "based on failure to warn with respect to . . . the use of the miter saw's clamp." (Dkt. No. 32, at 2).

---

[11] Defendant's primary challenge to Mr. Winter's opinion—that Mr. Winter "did no testing, study or analysis whatsoever to determine whether a differently worded instruction about the use of the clamp would have prevented the accident," (Dkt. No. 33-10, at 18-19)—is unavailing. Mr. Winter does not offer an opinion as to whether Mr. Price would have followed a different instruction; rather, he opines that the Operator's Manual failed to fully apprise users of the risk associated with not using the clamp, that Mr. Price's failure to use the clamp was a contributing factor to his injury, and that a different, more specific warning about the consequences of not using the clamp could have prevented that injury, assuming Mr. Price read and observed that warning. (Dkt. No. 37-6, at ¶¶ 17-18, 27, 31-32, 33(e)-(f); Dkt. No. 33-6, at 36 (acknowledging that a different instruction would result in a different outcome only if Mr. Price read and complied with it)). Further, Mr. Price testified that he did not understand from the Operator's Manual that failure to use the clamp increased the possibility of injury from things like kickback, (Dkt. No. 33-4, at 25, 27-28, 49), and he avers that he would have used the clamp had such a specific warning been provided. (Dkt. No. 37-4, at ¶¶ 10-12). Thus, Plaintiffs' evidence that Mr. Price would have followed a different instruction does not come from Mr. Winter's analysis, but from Mr. Price's own testimony. *See, e.g., Gould* 2006 WL 2301852, at *5, 2006 U.S. Dist. LEXIS 55323, at *16-17 (explaining that evidence of the plaintiff's subjective awareness of danger and understanding of warnings comes from his own testimony, rather than expert's testimony, because "Plaintiff's expert cannot, of course, testify to what was in Plaintiff's mind or what he knew or did not know about the dangers of the operation of the table saw").

### 3.   Warnings Regarding the Positioning of the Saw's Head Prior to a Slide Cut

Finally, Defendant seeks summary judgment with respect to "[t]hat portion of the Plaintiff[s']

Complaint that seeks recovery based on failure to warn with respect to the positioning of the

product's saw head prior to a slide cut." (Dkt. No. 32, at 2). Here, Defendant primarily argues that

the uncontroverted record evidence establishes that "there is no standard of care in existence with

respect to how a miter saw manufacturer should advise its consumers about the positioning of the

saw head before a slide cut is initiated." (Dkt. No. 33-10, at 16; *see also* Dkt. No. 42-1, at 5, 7).

Citing to admissions by Mr. Winter in his deposition, Defendant asserts that there is no rule,

regulation or industry standard requiring manufacturers to instruct operators to begin a slide cut at the

fully extended position, and that other miter saw manufacturers either do not specify the positioning

of the saw head at all in their manuals or use language that is similar or identical to the language in

Defendant's Operator's Manual. (Dkt. No. 33-10, at 16-17 (citing Dkt. No. 33-6, at 26-31, 34); *see

also* Dkt. No. 42-1, at 5, 7). In response, Plaintiffs rely on the testimony of Mr. Winter, who opines

that the need to warn users to extend a miter saw's head to its maximum extension before beginning

a slide cut is well known in the miter saw manufacturing industry. (Dkt. No. 37-10, at 14-15 (citing

Dkt. No. 37-6, at ¶¶ 27, 30). To support this proposition, Mr. Winter points to an online video

promulgated by PTI, as well as several manuals for similar saws from Defendant's competitors,

which include such an instruction. (*Id.*). Mr. Winter opines that, because failure to extend the Saw to

its maximum extension increases the risk of kickback and injury, the Operator's Manual's failure to

instruct users accordingly does not provide users with the information they need to operate the Saw

safely. (Dkt. No. 37-6, at ¶¶ 14-16, 26-27, 30, 32, 33(a)-(d)).

Plaintiffs have raised a triable issue of fact with respect to whether Defendant breached a

standard of care in the industry by not including explicit instructions to extend the Saw's head to its

maximum extension before performing a slide cut. Plaintiffs concede that Defendant's instructions

do not violate any rule, regulation or standard promulgated by UL, OSHA or CPSC. (Dkt. No. 37, at ¶ 18). However, Plaintiffs have proffered expert testimony that Defendant's instructions nonetheless breached a recognized industry standard, as evidenced by the PTI video and the manuals of several of Defendant's competitors. (*Id.* (citing Dkt. No. 37-6, at ¶ 27)).[12] Whether Plaintiffs' evidence establishes the existence of an industry standard of care that Defendants breached is a factual question that may not be resolved on summary judgment. *See Uzhca v. Wal-Mart Stores, Inc.*, No. 17-cv-3850, 2020 WL 5518591, at *7-8, 2020 U.S. Dist. LEXIS 167662, at *19-24 (S.D.N.Y. Sept. 14, 2020) ("[U]sually, when there is a factual question about the applicability of two competing industry standards, it is for the fact-finder to determine which standard applies," and where Plaintiffs have presented evidence, "even if minimal," that a trade group's guidelines represented a "recognized/viable" industry standard, "[i]n the absence of any identified authority expressly indicating that the [guidelines are] not to be used as an industry standard governing entities like Defendants," the "question of whether these guidelines govern Defendants' conduct should be for a jury to decide." (citing *Almonte v. Averna Vision & Robotics, Inc.*, 128 F. Supp. 3d 729 (W.D.N.Y. 2015))).

Relatedly, another of Defendant's key arguments—that it is undisputed that many other competitors' manuals do not include the instruction advocated by Plaintiffs—is incorrect. Defendant rests heavily on Mr. Winter's deposition testimony, repeatedly asserting that Mr. Winter concedes that many other miter saw manufacturers either "do not express in words how far back to pull the

---

[12] In its 7.1 Statement, Defendant cites to Mr. Winter's deposition testimony in asserting that it is undisputed that "[t]here is no rule, regulation or standard [including those promulgated by Underwriters Laboratories (UL), Occupational Safety & Health Association (OSHA) and/or the Consumer Product Safety Commission (CPSC)] that set forth a required warning regarding the proper method to undertake a slide cut." (Dkt. 34, at ¶ 18 (citing Dkt. 33-6, at 30-31)). Importantly, however, while the portion of Mr. Winter's deposition transcript Defendants cite to does include testimony that Mr. Winter is not aware of any *rule, statute or regulation* from any source requiring any particular instruction on the proper method of undertaking a slide cut, and is not aware of any *standard* on the issue promulgated by the three specific sources Defendants list, Mr. Winter did *not* concede that he was unaware of *any* industry-recognized standard on the issue. (Dkt. 33-6, at 30-31). To the contrary, as noted, Mr. Winter maintained that there *is* such a standard, as evidenced by the PTI video and manuals from Defendant's competitors.

saw head before making a slide cut," (Dkt. No. 34, at ¶ 22 (citing Dkt. No. 33-6, at 26-28; Dkt.

No. 33-9), or use "language virtually identical to Defendants' use of the phrase 'blade arbor (center

of the saw blade) is over the front of the workpiece.'" (Dkt. No. 34, at ¶ 23 (citing Dkt. No. 33-6, at

26-28; Dkt. No. 33-7, at 27; Dkt. No. 33-9); *see also* Dkt. No. 33-10, at 16; Dkt. No. 42-1, at 5, 7).

However, during his deposition, Mr. Winter testified that all but two of the manuals Defendant relies

on *do* instruct operators to pull the saw head to its maximum extension through the use of

instructional diagrams that accompany the text of the instructions (and that, of the remaining two,

one of them provides this instruction by inference, if not explicitly). (Dkt. No. 37, at ¶¶ 22-23 (citing

Dkt. No. 33-6, at 26-28)). Mr. Winter's analysis of these manuals, which is based on his years of

experience in the forensic review and analysis of power tool safety issues and the drafting of

instruction manuals, (Dkt. No. 37-6, at ¶ 1), raises a genuine dispute as to what the standard practice

of miter saw industry manufacturers is with respect to instructions about the saw head position—a

dispute which must be resolved by the jury.

Moreover, even if it were undisputed that there is no industry standard requiring a warning to

pull the saw head to its maximum extension before beginning a slide cut, this alone would not entitle

Defendant to summary judgment. A conclusion that Defendant's warnings met industry standards is

not, as a matter of law, dispositive on the question of whether these warnings were adequate for

purposes of Plaintiffs' claims. *See Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422, 450 (S.D.N.Y.

1999) (citing *Sawyer v. Dreis & Krump Mfg. Co.*, 67 N.Y.2d 328, 337 (1986)); *see also Mustafa v.

Halkin Tool, Ltd.*, No. 00-cv-4851, 2007 WL 959704, at *14, 2007 U.S. Dist. LEXIS 23096, at *52-

53 (E.D.N.Y. March 29, 2007) ("Even if there was no dispute [as to the proper industry standard] . . .

case law has made clear that compliance with applicable national and industry standards is relevant,

though not dispositive of the issue of defective design and negligence." (citations omitted)).

Here, regardless of what the standard in the industry is, Plaintiffs' expert has presented his analysis that failure to pull the Saw's head to its maximum extension before beginning a slide cut increases the risk of kickback, that this risk is well-known within the miter saw manufacturing industry (as evidenced by the PTI video and instructions in certain operator's manuals), and that the Operator's Manual's failure to instruct operators in this regard or warn them of this risk thus led to an increased likelihood of serious injury that was foreseeable and could have been avoided through different instructions.[13] (Dkt. No. 37-6, at ¶¶ 26-30, 33(a)-(d)). Mr. Winter's analysis is sufficient to raise a triable issue of fact as to whether Defendant's instructions adequately discharged Defendant's duty to warn, regardless of whether or not those instructions complied with all the relevant industry standards. *See Mustafa*, 2007 WL 959704, at *8, 2007 U.S. Dist. LEXIS 23096, at *29 (explaining that "even if the jury eventually finds that" the defendant's product conformed to the industry standard, this "does not impact the reliability of [the plaintiff's expert's] conclusions, nor does it preclude [the expert] from considering other evidence in forming his opinion on design defect . . . If it were otherwise, there would be no need for expert opinions once the appropriate industry safety standard was identified and conformance or nonconformance with that standard was established." (citations omitted)); *cf. Beruashvili v. Hobart Corp.*, No. 05-cv-1646, 2010 WL 11622750, at *9, 2010 U.S. Dist. LEXIS 146015, at *31-32 (E.D.N.Y. July 15, 2010) (admitting expert testimony on adequacy of warnings despite lack of research on "contemporaneous warning standards" in the

---

[13] It appears from the deposition testimony of Defendant's expert, Richard C. Otterbein, P.E. ("Mr. Otterbein"), that Mr. Otterbein may dispute Mr. Winter's contention that extending the saw head to its maximum extension is the safest, proper way to perform a slide cut, and may therefore intend to argue that the warnings Mr. Winter advocates for are not necessary to avoid a foreseeable risk of harm. (Dkt. No. 37-3, at 24-29). Defendant makes no contention that it is entitled to summary judgment based on its expert's testimony, and in any event, the decision as to which expert's view is most reasonable is a question for the jury. *See Melvin v. Cty. of Westchester*, No. 14-cv-2995, 2019 WL 1227903, at *14, 2019 U.S. Dist. LEXIS 42772, at *46-47 (S.D.N.Y. March 15, 2019) ("Where, as here, 'there are conflicting expert reports and testimony, summary judgment is inappropriate and the jury must decide whether or how much to credit the evidence.'" (citation omitted)).

industry, based on expert's "significant experience with designing warnings," published articles on the topic, and reliance on other authorities in the field).

Finally, Plaintiffs have raised a triable issue of fact as to whether Defendant's failure to instruct users of the Saw to pull the head to its maximum extension before beginning a slide cut caused Mr. Price's injury. In his deposition testimony and in the Price Affidavit, Mr. Price stated that, on the day of his accident, he performed a slide cut as instructed in the Operator's Manual, he did not pull the Saw's head to its maximum extension before beginning because the Operator's Manual did not instruct him to do so, and he would have followed a different instruction had one been provided. (Dkt. No. 37-4, at ¶¶ 4-8; Dkt. No. 33-4, at 21-22, 29, 39-40, 42-43, 50). Again, the credibility of these assertions is a "matter[] for the jury." *Rule*, 85 F.3d at 1011. At this stage, Plaintiffs have presented evidence sufficient to survive summary judgment.[14]

Therefore, the Court will deny Defendant's Motion for Summary Judgment on Plaintiffs' Claims for Relief "based on failure to warn with respect to the positioning of the product's saw head prior to a slide cut." (Dkt. No. 32, at 2).

## V.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Motion to Strike (Dkt. No. 41) is **GRANTED IN PART AND DENIED IN PART**, as set forth in this Decision; and it is further

**ORDERED** that the Motion for Summary Judgment (Dkt. No. 32) is **GRANTED** as to the relief sought in paragraphs (a) and (b), and **DENIED** as to the relief sought in paragraph (c); and it is accordingly

---

[14] Defendant's primary argument on causation here is identical to its causation argument with respect to the clamp warnings—namely, that Mr. Winter "did no test or analysis whatsoever" to establish that Mr. Price would have heeded a different warning, (Dkt. No. 33-10, at 17)—and fails for the same reasons. *See supra* n. 11.

**ORDERED** that all claims against Defendant Ryobi Technologies, Inc. are **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiffs' Third Claim for Relief (Breach of Express and Implied Warranty) against Defendant One World Technologies, Inc. is **DISMISSED with prejudice**; and it is further

**ORDERED** that all claims for punitive or exemplary damages against Defendant One World Technologies, Inc. are **DISMISSED with prejudice**; and it is further

**ORDERED** that any of Plaintiffs' claims of defect related to the design or manufacture of the Saw are **DISMISSED with prejudice,** except to the extent such claims are based on allegedly defective warnings with respect to the positioning of the Saw's head prior to a slide cut and with respect to the use of the Saw's clamp; and it is further

**ORDERED** that to the extent Plaintiffs seek recovery on a general warnings claim, that claim is **DISMISSED with prejudice**; and it is further

**ORDERED** that Defendants' motion to dismiss Plaintiffs' claims for recovery based on failure to warn with respect to the positioning of the Saw's head prior to a slide cut and with respect to the use of the Saw's clamp is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 30, 2020
         Syracuse, New York

Brenda K. Sannes
U.S. District Judge

31